IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

RAINNEE J. BROWN,

                Plaintiff,

    v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.

No. CV-10-1119-HZ

OPINION AND ORDER

Laurie B. Mapes
33465 SW Maple Street
PO Box 1241
Scappoose, OR 97056-1241

    Attorney for Plaintiff

Adrian L. Brown
U.S. ATTORNEY'S OFFICE
District of Oregon
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204

1 - OPINION AND ORDER

L. Jamala Edwards
SOCIAL SECURITY ADMINISTRATION
Office of the General Counsel
701 Fifth Avenue
Suite 2900, M/S 221A
Seattle, WA 98104

      Attorneys for Defendant

HERNANDEZ, District Judge:

      Plaintiff, Rainnee J. Brown ("Plaintiff" or "Brown"), brings this action pursuant to the Social Security Act (the "Act"), 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3), to obtain judicial review of the final decision of the Commissioner of Social Security (the "Commissioner"). The Commissioner found Plaintiff not disabled and denied her applications for Title II Disability Insurance Benefits ("DIB") and Title XVI Supplemental Security Income ("SSI"), 42 U.S.C. §§ 423 and 416, respectively. For the reasons set forth below, the Commissioner's decision is REVERSED and REMANDED for the immediate calculation and award of benefits.

## PROCEDURAL BACKGROUND

      On October 18, 2006, Plaintiff protectively filed for Title II DIB and Title XVI SSI, alleging a disability onset date of August 1, 2004. R. at 12. Plaintiff's applications were denied, and she requested a hearing before an administrative law judge ("ALJ") of the Social Security Administration ("SSA"). Id. A hearing was held on July 8, 2009, before ALJ Richard A. Say, who found Plaintiff not disabled. R. at 23. Plaintiff requested review of the ALJ's decision, but the Appeals Council denied Plaintiff's request on July 21, 2010. R. at 1.

## FACTUAL BACKGROUND

The parties are familiar with the medical evidence and other evidence of the record. Therefore, the evidence will not be repeated here except as necessary to explain my decision.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. See Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. Id.

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; see 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 141; see 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any

impairment(s), has the residual functional capacity ("RFC") to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If so, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner.

In step five, the Commissioner must establish that the claimant can perform other work. Yuckert, 482 U.S. at 141-42; see 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one of the sequential proceedings, the ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged August 1, 2004, disability onset date. R. at 14, Finding 2. At step two, the ALJ found Plaintiff "has the following severe impairments: mood disorder, degenerative disc disease of the lumbar spine, status post ileostomy, left knee Baker's cyst, asthma, and obesity." Id., Finding 3.

At step three, the ALJ found Plaintiff's impairments did not meet or equal the requirements of a listed impairment pursuant to 20 C.F.R. Part 404, Subpart P, Appendix 1. R. at 16-18, Finding 4.

At step four, the ALJ found Plaintiff was not able to perform past relevant work. R. at 21-22, Finding 6. At step five, the ALJ found Plaintiff was not disabled because she could perform the occupations of: (1) an agricultural produce sorter, Dictionary of Occupational Titles ("DOT") #(529.687-086); (2) garment sorter, DOT #222.687-014; and (3) housekeeper, DOT #323.687-014. R. at 22-23, Finding 10.

4 - OPINION AND ORDER

## STANDARD OF REVIEW

A court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [a court] may not substitute [its] judgment for the ALJ's." Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted).

The initial burden of proof rests upon the claimant to establish disability. Howard, 782 F.2d at 1486. To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A).

## DISCUSSION

Plaintiff challenges the ALJ's disability determination on a number of grounds. She challenges the ALJ's evaluation of examining psychologist Dr. Keli Dean, the ALJ's findings at step three of the sequential analysis, his evaluation of Plaintiff's RFC, and his conclusion at step five of the sequential analysis. For the reasons that follow, I conclude the ALJ's error at step

5 - OPINION AND ORDER

three of the sequential proceedings warrants a reversal and remand for the immediate payment of benefits. Having so concluded, I do not address those arguments which are not determinative to my decision at step three of the sequential analysis.

**I. Opinion of Dr. Keli Dean, Psy. D.**

Plaintiff contends the ALJ erred by giving "little weight" to the opinion of Dr. Dean, Plaintiff's examining psychologist. See R. at 20. The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician. See Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007). An examining physician examines, but does not treat the claimant. E.g., Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). A nonexamining physician is one who neither examines nor treats the claimant. Id. "The opinion of an examining physician is entitled to greater weight than the opinion of a nonexamining physician." Id. "[T]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of . . . an examining physician." Id. at 830-31. When a nonexamining physician's opinion contradicts an examining physician's opinion and the ALJ gives greater weight to the nonexamining physician's opinion, the ALJ must articulate his reasons for doing so. See, e.g., Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600-01 (9th Cir. 1999). A nonexamining physician's opinion can constitute substantial evidence if it is supported by other evidence in the record. Id. at 600.

At the request of Disability Determination Services ("DDS"), Dr. Dean examined Plaintiff on January 23, 2007, for the purpose of determining Plaintiff's "current level of cognitive functioning, to identify her strengths and weaknesses, and to make recommendations with regard to her ability to participate in the [Department of Human Services ("DHS")] program

6 - OPINION AND ORDER

as well [as] in training and employment." R. at 239. Dr. Dean documented that Plaintiff arrived twenty minutes late to her appointment, appeared unkept, had poor hygiene, and had a "notable body odor." R. at 242. She observed that "[s]everal of [Plaintiff's] front teeth appeared decayed and broken" and that Plaintiff "had picking marks on her face, neck, and arms." Id. She also documented particular portions of her medical history, including that in 2003 Plaintiff was diagnosed with familial adenomatous polyposisher, which required Plaintiff's entire colon be removed and replaced with an ileostomy to which she connects an ileostomy bag. See R. at 196-209, 242.

That same day, January 23, 2007, Dr. Dean administered three standardized tests on Plaintiff: (1) the Wechsler Adult Intelligence Scale-Third Edition ("WAIS-III")[1]; (2) the Wechsler Memory Scale-Third Edition ("WMS III"), and (3) the Minnesota Multiphasic Personality Inventory-Second Edition ("MMPI-2").[2] R. at 243-44. Dr. Dean concluded that Plaintiff's WAIS-III score fell in the average range, and that her WMS III scores ranged from the "[b]orderline range to the [a]verage range." R. at 243. She also concluded that "[t]he results of the intake interview and examination of the MMPI-2 indicate[d] [Plaintiff] is experiencing significant mental health problems." R. at 245. She opined that Plaintiff's "current reporting of symptoms [were] consistent with a diagnosis of Major Depression, Recurrent, Severe." Id.

Dr. Dean completed a mental residual functional capacity assessment ("MRFC") of Plaintiff on February 6, 2007. See R. at 246-48. Dr. Dean's MRFC assessment stated that Plaintiff had marked limitations in "social interaction" and "sustained concentration and

---

[1] WAIS-III measures an individual's ability to hold information temporarily in memory for the purpose of using that information to perform a specific task. R. at 243.

[2] MMPI-2 assesses an individual's current emotional functioning. R. at 244.

7 - OPINION AND ORDER

persistence." See R. at 247-48. Dr. Dean also completed a Rating of Impairment Severity Report on February 6, 2007, rating Plaintiff as having marked restrictions in activities of daily living and social functioning. R. at 249.

On February 27, 2007, the state agency's reviewing medical consultant, Bill Hennings, Ph.D., also completed an MRFC. See R. at 292-94. Dr. Hennings' MRFC assessment found Plaintiff had only moderate limitations in social interaction and sustained concentration and persistence. See Id. Because the opinion of Dr. Dean, an examining doctor, was contradicted by the opinion of Dr. Hennings, a nonexamining doctor, the ALJ was required to provide at least specific and legitimate reasons supported by substantial evidence in the record for discounting Dr. Dean's opinion. See Moore v. Comm'r Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002) (stating the ALJ could reject the opinions of claimant's "examining physicians, contradicted by a nonexamining physician, only for specific and legitimate reasons that are supported by substantial evidence in the record") (internal quotations and citations omitted).

The Commissioner asserts the ALJ properly discounted Dr. Dean's medical opinion because it was inconsistent with Dr. Hennings' MRFC assessment, was not well supported by her own medical reports, was based largely on Plaintiff's self-reports, and was inconsistent with the medical record as a whole. See R. at 20. After carefully reviewing the record, I find that the ALJ failed to provide specific and legitimate reasons supported by substantial evidence when giving "little weight" to Dr. Dean's medical opinion.

First, Dr. Hennings' opinion by itself may not constitute "substantial evidence" to contradict Dr. Dean's examining opinion. See, e.g., Lester, 81 F.3d at 830-32 ("The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the

8 - OPINION AND ORDER

rejection of the opinion of either an examining physician or a treating physician."). Second, I disagree with the ALJ's finding that Plaintiff's MMPI-2 test results "were incomplete due to inconsistent responses" and that Dr. Dean "based her opinion largely on the claimant's self-report . . . [and her opinion was] inconsistent with the medical record as a whole, which evidence[d] several normal mental status exams and intermittent mental health treatment." R. at 20. Contrary to the ALJ's determination, Plaintiff's MMPI-2 test results were not "incomplete." Id. Rather, Dr. Dean concluded that Plaintiff's inconsistent responses during the second half of the MMPI-2 test "only allowed for interpretation of the basic scales." R. at 244. Additionally, Dr. Dean did not base her evaluation largely on Plaintiff's self-reports, but relied to a large extent on objective testing, including the WAIS-III, WMS III, and MMPI-2. See R. at 243-46. In fact, Dr. Dean explicitly stated in her medical notes that '[d]ue to the use of standardized procedures and [Plaintiff's] overall level of cooperation, the results obtained [were] an accurate reflection of [Plaintiff's] abilities." R. at 243. The medical record also does not evidence "normal mental status exams [of Plaintiff] and intermittent mental health treatment" as the ALJ found. R. at 20. Rather, the record shows Plaintiff has, among other things, consistently taken Lamictal for her "moderate to severe" bipolar affective disorder with depression and has consistently sought treatment for her pain and depression. See R. at 218, 259-69, 339.

The Commissioner correctly asserts that Plaintiff has a history of missing some medical appointments. See R. at 305. To the extent that the Commissioner contends Plaintiff's record of missed appointments indicates her mental impairments are not as limiting as she describes, I find such argument unsupported by substantial evidence in the record. No doctor found Plaintiff to be malingering. Moreover, the medical record reflects that Plaintiff has been diagnosed with

multiple mental health limitations, including depression, bi-polar disorder, and mood disorder. R. at 14, 339. In fact, Dr. Dean expressly opined in her medical notes that Plaintiff experiences "poor motivation and low energy" which she specifically attributed to her depression. R. at 246. Dr. Dean even recommended that Plaintiff "will likely need assistance" with applying for SSI because of her low motivation and energy. Id. When read as a whole, the great weight of the evidence supports the conclusion that Plaintiff's history of missed appointments is more aptly explained by her mental impairments, not her lack of effort to obtain available treatment.

Lastly, I find it improper that the ALJ relied on only a selective portion of Dr. Dean's medical opinion to support his conclusion that Plaintiff did not meet Listing 12.04, yet chose not to rely on other portions of Dr. Dean's opinion contradicting his conclusion, namely that Plaintiff has marked limitations in both daily living and social functioning. R. at 17, 249. While the ALJ is not required to discuss every piece of evidence, he may not omit evidence that is significant or probative, as he does here. See Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003).

In sum, I find that the ALJ failed to provide specific and legitimate reasons supported by substantial evidence in the record when assigning "little weight" to Dr. Dean's medical opinion.

## II. Meeting or Equaling Listed Impairment 12.04

Plaintiff argues the ALJ should have found at step three of the sequential proceedings that Plaintiff meets or equals the requirements of social security listing 12.04 for affective disorders ("Listing 12.04"). See 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.04. If a claimant meets the listing requirement for affective disorders, he is per se disabled. See 20 C.F.R. § 416.925(a). The required level of severity for affective disorders under Listing 12.04 is met by satisfying parts A and B together, or part C alone. See 20 C.F.R. Part 404, Subpt. P, App. 1, §

12.04. The ALJ did not discuss in detail whether Plaintiff met Listing 12.04 part A. Instead, the ALJ only discussed whether Plaintiff met Listing 12.04 part B and C. See R. at 16-18.

### A. Listing 12.04 Part A

I turn first to the issue of whether Plaintiff's impairments satisfy the criteria of Listing 12.04 part A. Listing 12.04 part A requires Plaintiff show "[m]edically documented persistence, either continuous or intermittent, of . . . [d]epressive syndrome characterized by at least four of the [nine symptoms]": (1) Anhedonia or pervasive loss of interest in almost all activities; (2) appetite disturbance with change in weight; (3) sleep disturbance; (4) psychomotor agitation or retardation; (5) decreased energy; (6) feelings of guilt or worthlessness; (7) difficulty concentrating or thinking; (8) thoughts of suicide; or (9) hallucinations, delusions or paranoid thinking. See 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.04A.

Here, numerous doctors of record diagnosed Plaintiff with depression. R. at 245, 262, 339. With regards to the enumerated symptoms under Listing 12.04 part A, substantial evidence in the record supports the conclusion that Plaintiff exhibits at least four of the symptoms. The record clearly shows Plaintiff experiences sleep disturbance, the third enumerated symptom, because she has been diagnosed with insomnia for which she has been prescribed Seroquel. See R. at 15, 212, 268, 318, 330, 337, 345, 349. With respect to the seventh enumerated symptom, difficulty in concentrating or thinking, Dr. Dean concluded Plaintiff is "markedly limited" in her "ability to maintain attention and concentration for extended periods." R. at 248. Lastly, with respect to the eighth and ninth enumerated symptoms, "thoughts of suicide" and "hallucinations, delusions or paranoid thinking," respectively, Dr. Dean indicated Plaintiff "has ongoing suicidal thoughts" and that Plaintiff has "some paranoid ideation." R. at 245.

11 - OPINION AND ORDER

In light of the above, I conclude that substantial evidence supports a finding that Plaintiff satisfies the requirements of Listing 12.04 part A.

**B. Listing 12.04 Part B**

Plaintiff contends that she also meets the criteria of Listing 12.04 part B. The requirements of Listing 12.04 part B are met when the claimant has at least two of the four following limitations: (1) Marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.04B. "Marked" means "more than moderate, but less than extreme." See 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00C.

Here, Dr. Dean concluded Plaintiff has marked limitations in both daily living and social functioning, the first and second limitations of Listing 12.04 part B, respectively. R. at 249. The ALJ, however, found that Plaintiff has only "mild restriction" in activities of daily living and only "moderate difficulties" in social functioning. R. at 17.

With respect to Plaintiff's activities of daily living, the ALJ stated:

> [Plaintiff] testified that she has good and bad days, but on days when she can get out of bed, she can groom herself, go to appointments, and do some cooking and laundry. It appears that many of her reported limitations stem from the alleged physical impairments. [Plaintiff] cares for her young daughter with the help of her mother, drives, does shopping within her physical limitations, likes to cook, and reads books all of the time. In January of 2007, she reported that she was caring for her family and her own personal needs despite her depressive symptoms. In September of 2007, she reported that she was putting in two hours or work per day at a senior center.

R. at 16-17 (internal citations omitted).

With regards to social functioning, the ALJ stated that Plaintiff's "mental status exam . . . has shown [Plaintiff] to be cooperative and verbal, with positive and

appropriate mood, and euthymic affect." R. at 17. He also found that Plaintiff was "appropriate at medical appointments, and performed the senior center work noted above without any reported social problems." Id.

A careful review of the evidence shows that the ALJ selectively referred to only those portions of the record supporting his conclusions. This was improper. See, e.g., Holohan v. Massanari, 246 F.3d 1195, 1207 (9th Cir. 2001). The district court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." E.g., Hammock, 879 F.2d at 501 (internal quotation marks and citations omitted).

Here, the ALJ determined that "many of [Plaintiff's] reported limitations stem from [her] alleged physical impairments." R. at 16-17. The record, however, is replete with evidence showing that Plaintiff's reported limitations also stem from her mental impairments. For example, Dr. Dean expressly opined that "[t]he results of [Plaintiff's] intake interview and examination of the MMPI-2 indicate[d] [Plaintiff was] experiencing significant mental health problems." R. at 245. She opined that "it [was] possible [Plaintiff's] low energy and depressed mood interfere[d] . . . with her concentration and motivation[,] resulting in decreased cognitive efficiency." Id. She further opined that Plaintiff's "chronically depressed mood . . . interfere[d] with her ability to participate socially and vocationally." Id. Indeed, Dr. Dean ultimately concluded that Plaintiff's "significant mental health symptoms [would] likely make participation in the DHS program and competitive employment difficult for her at this time." Id.

Similarly, Dr. Gilmore diagnosed Plaintiff with various mental impairments, including "bipolar affective disorder with depression moderate to severe; some panic tendencies and some agoraphobia." R. at 329. She ultimately concluded, "[I] do not feel at this time that [Plaintiff] is employable [or] able to seek employment." Id. The ALJ, however, did not address Dr. Gilmore's diagnoses or opinion that Plaintiff is unable to work, and instead selectively referenced a portion of Dr. Gilmore's treatment notes stating Plaintiff's "orientation to place, time, [and] person" and "recent and remote memory" were "normal" and that her "mood and affect" were "positive and appropriate." R. at 217. The ALJ's select reading of the record improperly relies on only those portions supporting his conclusions while ignoring Dr. Gilmore's ultimate conclusion that Plaintiff is unable to work. R. at 218, 339.

The ALJ also misrepresents the competent evidence in the record to justify his conclusion. Here, the ALJ cited Dr. Gilmore's medical notes for the proposition that in September 2007, Plaintiff "reported that she was putting in two hours or work per day at a senior center . . . without any reported social problems." R. at 17. The relevant portion of Dr. Gilmore's medical records, however, states the following: "Social Security application; has put in request for hearing; then needs to find a lawyer; has been turned down twice and now on third go around; is putting her in work experience for 2 hours a day; is down at Senior Center." R. at 317. Dr. Gilmore's statements are unclear, and at the very least, do not provide substantial evidence supporting the ALJ's determination that Plaintiff worked at a senior center without any social problems.

The ALJ's selective reliance on the medical notes of Elizabeth Delong ("Delong"), a licensed clinical social worker, and on the medical notes from Oregon Health Sciences

University ("OHSU") was also improper. See R. at 17.  The ALJ selectively emphasized a portion of Delong's December 18, 2006, medical notes stating Plaintiff "presented with a euthymic affect.  She was cooperative and verbal during the interview.  There was no evidence of a thought disorder or cognitive impairment.  Her long term and short term memory appeared adequate as she reported her psychosocial history." R. at 260.  The ALJ, however, ignored Delong's more recent medical notes which show that on February 20, 2007, Delong established a treatment plan for Plaintiff "to provide supportive psychotherapy . . . [and] to teach [Plaintiff] to identify and relieve the symptoms of depression and . . . assist [her] with pain management techniques." R. at 262.  More important, he excluded any reference to Delong's April 12, 2007, opinion that Plaintiff had made no progress with respect to her treatment plan and continued to report "depressive symptoms (as evidenced by poor self[-]esteem, lack of motivation, no energy, feelings of worthlessness, and not engaging adequately in self[-]care activities)." R. at 262, 264.  The ALJ also selectively relied on only a particular portion of the OHSU medical reports to support his determination that Plaintiff's "[o]rientation, [judgment], insight, and memory" and "[a]ttention, concentration, and thought content" were "all within normal limit[s]." See R. at 17, 356, 374.  A careful reading of the record shows that based on the same information, the medical staff at OHSU diagnosed Plaintiff with, among other things, depressive disorder, "other malaise and fatigue," and obsessive-compulsive disorder.  R. at 356-57, 374.  The ALJ, however, makes no mention of this fact in his step-three findings.

     In sum, I find that the medical record as a whole does not provide substantial evidence supporting the ALJ's step-three determination that Plaintiff has only moderate difficulties in

social functioning and only mild restrictions in activities of daily living, and that her impairments did not meet the requirements of Listing 12.04.

### III. Remand

This court has the discretion to remand for further proceedings or for immediate payment of benefits. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000). The issue turns on the utility of further proceedings. Id. at 1179. A remand for an award of benefits is appropriate where there is no useful purpose to be served by further proceedings or where the record is fully developed. Id.

Under the "crediting as true" doctrine, evidence should be credited and an immediate award of benefits directed where "'(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.'" Id. at 1178 (citation omitted). "The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings." Blaylock v. Astrue, No. 10–CV–6089–BR, 2011 WL 2174032, at *6 (D. Or. 2011).

With respect to the first prong, the ALJ failed to provide legally sufficient reasons for giving "little weight" to Dr. Dean's medical opinion. With respect to the second prong, neither party asserts that the record here is insufficient, and I find the record sufficiently developed. With respect to the third prong, Dr. Dean opined that Plaintiff has marked restrictions in her activities of daily living and social functioning. R. at 249. Crediting Dr. Dean's opinion as true supports a finding that Plaintiff satisfies the criteria of Listing 12.04 part B. As discussed above,

substantial evidence in the record also supports a finding that Plaintiff meets the criteria of Listing 12.04 part A. Accordingly, under the "crediting as true" doctrine, I find that Plaintiff satisfies the required level of severity for affective disorders under Listing 12.04, and is therefore disabled.[3] See 20 C.F.R. Part 404 Subpt. P, App. 1, § 12.04. Additional proceedings are therefore unnecessary to determine Plaintiff's entitlement to benefits. See Lester, 81 F.3d at 834 (stating that if improperly rejected evidence demonstrates a claimant is disabled, remand for payment of benefits is proper).

## CONCLUSION

For the foregoing reasons, this court REVERSES the decision of the Commissioner and REMANDS this matter pursuant to sentence four of 42 U.S.C. § 405(g) for the immediate calculation and award of benefits.

IT IS SO ORDERED.

Dated this 2nd day of August, 2011.

/s/ Marco A. Hernandez
MARCO A. HERNANDEZ
United States District Judge

---

[3] Dr. Dean also opined that Plaintiff's impairments satisfied the criteria of Listing 12.04 part C. See R. at 249-50; see also Def.'s Br. at 11.